RECORD NOS. 15-1445; 15-1501

ORAL ARGUMENT HAS NOT YET BEEN SCHEDULED

In The

# United States Court of Appeals

## For The District of Columbia Circuit

# AMERICAN BAPTIST HOMES OF THE WEST, DOING BUSINESS AS PIEDMONT GARDENS,

*Petitioner*,

v.

# NATIONAL LABOR RELATIONS BOARD,

*Respondent*,

--------------------------------------------------------------------------------------------

## SERVICE EMPLOYEES INTERNATIONAL UNION, UNITED HEALTHCARE WORKERS – WEST

*Intervenor for Respondent.*

## ON PETITION FOR REVIEW AND CROSS-APPLICATION FOR ENFORCEMENT OF AN ORDER OF THE NATIONAL LABOR AND RELATIONS BOARD

————————

## BRIEF OF PETITIONER

————————

David S. Durham
Christopher M. Foster
DLA Piper LLP (US)
555 Mission Street, Suite 2400
San Francisco, California 94105-2933
(415) 836-2500 (Telephone)
(415) 836-2501 (Facsimile)

*Counsel for Petitioner*

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

**Parties, Intervenors, and Amici.**  The parties to this action are American Baptist Homes of the West, doing business as Piedmont Gardens ("Piedmont Gardens") and the National Labor Relations Board ("NLRB" or "Board").  The Service Employees International Union, United Healthcare Workers – West ("Union") is the only intervenor and there are no amici curiae.  All of the aforementioned were parties in the underlying case before the NLRB.

**Ruling Under Review.**  Petitioner Piedmont Gardens seeks review of the Decision and Order of the Board in NLRB Case No. 32-CA-063475, which was entered on June 26, 2015 and reported at 362 N.L.R.B. No. 139.  This Decision and Order may be found in the Joint Appendix (J.A.), filed concurrently, at pp. 151-168.  The Board cross-petitions for enforcement of same.

**Related Cases.**  The case now on review was previously before this Court in similar form but not resolved.  On December 15, 2012, the Board issued a Decision and Order, reported at 358 N.L.R.B. No. 46, nearly identical to the one now at issue.  J.A. 132-150.  Piedmont Gardens filed a Petition for Review of same on January 17, 2013 (Case No. 13-1011), and on January 25, 2013, on its own motion, this Court held the case in abeyance in light of its decision in *NLRB v. Noel Canning*, 705 F.3d 490 (D.C. Cir. 2013) which concluded that the NLRB was improperly constituted from January 2012 to August 2013 because three of its

members were invalidly appointed under the Recess Appointments Clause, U.S. Const. art. II, §2, cl. 3.

On June 26, 2014, the Supreme Court affirmed this Court's decision in *NLRB v. Noel Canning*, __ U.S. __ , 134 S. Ct. 2550 (2014). In light of same and pursuant to Section 10(d) of the National Labor Relations Act ("NLRA"), 29 U.S.C. §160(d), the Board then set aside its December 15, 2012 Decision and Order and filed a Motion to Dismiss, which the Court granted on August 14, 2014.

On June 26, 2015, the Board issued a Decision and Order against Piedmont Gardens nearly identical to the one issued December 15, 2012. J.A. 151-168. On July 2, 2015, the Union filed a Petition for Review in the Ninth Circuit Court of Appeals (Case No. 15-72033); on July 6, 2015, Piedmont Gardens filed a Petition for Review in the D.C. Circuit Court of Appeals (Case No. 15-1207); and on July 23, 2015, the Board filed a Petition for Enforcement in the Ninth Circuit Court of Appeals ("Ninth Circuit") (Case No. 15-72242).

On July 13, 2015, pursuant to 28 U.S.C. § 2112(a)(3), the United States Judicial Panel on Multidistrict Litigation issued a Consolidation Order and transferred said petitions to the Ninth Circuit based on random selection. However, on December 7, 2015, the Ninth Circuit granted Piedmont Gardens' Motion to Dismiss the Union's Petition for Review because the Union was a non-aggrieved

party lacking standing, and then transferred the remaining petitions back to this

Court per 28 U.S.C. § 2112(a)(5).

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure and Circuit Rule 26.1 of the United States Court of Appeals for the District of Columbia Circuit, Petitioner American Baptist Homes of the West, a California nonprofit public benefit corporation having the general purpose of providing housing, healthcare and supportive services to seniors, doing business as Piedmont Gardens, certifies that no person or entity owns or controls American Baptist Homes of the West through stock ownership.

Eight of the members of American Baptist Homes of the West's fifteen-member Board of Directors are elected by Cornerstone Affiliates, which is also a California non-profit public benefit corporation.  Neither American Baptist Homes of the West nor Cornerstone Affiliates is a publicly held corporation, neither of them issues stock, and to American Baptist Homes of the West's knowledge, no entity other than Cornerstone Affiliates has an interest reportable under either FRAP 26.1 or Circuit Rule 26.1.

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES ..............i

CORPORATE DISCLOSURE STATEMENT .......................................iv

TABLE OF CONTENTS...........................................................v

TABLE OF AUTHORITIES ................................................... vii

GLOSSARY OF TERMS ...................................................... xii

STATEMENT OF JURISDICTION................................................1

STATEMENT OF ISSUES PRESENTED FOR REVIEW .....................................1

STATUTES AND REGULATIONS................................................2

STATEMENT OF THE CASE....................................................3

STATEMENT OF FACTS ........................................................8

    I.     Background ........................................................8

        A.    Piedmont Gardens...................................................8

        B.    The Union and Bariuad.............................................9

        C.    Piedmont Gardens' Policy And Practice Of Ensuring Confidentiality Of Written Statements Provided By Witnesses Reporting Employee Misconduct ..............................9

    II.    Investigation Of Employee Misconduct...............................10

    III.   Union Information Requests ............................................11

SUMMARY OF ARGUMENT ..................................................14

STANDING .................................................................................. 18

STANDARD OF REVIEW .......................................................... 18

ARGUMENT ............................................................................... 19

    I.    The Board's Decision & Order Is An Inadequate, Irrational, And/Or Arbitrary Departure From Thirty-Seven Years Of Precedent Protecting Employer And Employee Interests In Witness Statement Confidentiality ....................................................... 19

        A.    The Board Erred In Concluding, Without Any Evidence Or Reasoned Analysis, That Confidential Witness Statements Are Not Fundamentally Different From Other Types Of Generic Information Disclosable To Unions ............ 27

        B.    The Board's Decision And Order Is Arbitrary And Capricious In Failing To Analyze Or Adequately Weight The "Chilling" Impact On Employees ...................................... 29

        C.    The Board Failed To Analyze Or Rely On Any Evidence Of Deficiencies With The Current State of Union Grievance Investigations (*e.g.*, Unions' Ability To Rely On Summaries Of Witness Statements Plus The Names And Positions Of Witnesses) ..................................................... 32

    II.    The Board's Order Requires Compliance With An Inadequate, Irrational, And Arbitrary Burden Of Proof Any Time Witness Statements Are Requested By The Union ........................................... 35

    III.    The Board's Decision And Order Undermines Piedmont Gardens' Ability To Reasonably Ensure Compliance With Federal Anti-Discrimination Laws – Areas Outside The NLRA's Delegated Responsibility ...................................................... 39

    IV.    The Board's Conclusion That Hutton's Witness Statements Were Not Confidential Under *Anheuser-Busch* Is Legally Erroneous And Not Supported By Substantial Evidence ................... 42

- vi -

CONCLUSION & REQUESTED RELIEF.............................................................45

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

## <u>TABLE OF AUTHORITIES</u>

<b><u>Page(s)</u></b>

## <u>CASES</u>

*Adtranz Abb Daimler-Benz Transportation, N.A., Inc., v. NLRB,*
    253 F.3d 19 (2001) ...............................................................37, 40

*Allentown Mack Sales & Servs. v. NLRB,*
    522 U.S. 359 (1998)..............................................................18, 42

*Anheuser-Busch, Inc.,*
    237 NLRB 982 (1978)........................................ 1, 4, 5, 6, 7, 12, 14, 16, 17,
                         21, 23, 24, 26, 27, 32, 35, 42, 43, 44, 45

*Asarco v. NLRB,*
    805 F.2d 194 (6th Cir. 1986) ........................................................27

*Banner Health Sys.,*
    362 NLRB No. 137 (2015) ...........................................................30

*Boyertown Packaging Corp.,*
    303 NLRB 441 (1991)..................................................................28

*Boyle's Famous Corned Beef Co. v. NLRB,*
    400 F.2d 154 (8th Cir. 1968) ........................................................42

*Bro-Tech Corp v. NLRB,*
    105 F.3d 890 (3d Cir. 1997) .........................................................19

*Brooks v. NLRA,*
    348 U.S. 96 (1954)..................................................................20, 39

*CAN-AM Plumbing, Inc., v. NLRB,*
    321 F.3d 145 (D.C. Cir. 2003).......................................................40

*Chief Authorities Designated by an asterisk.*

*ConAgra Foods, Inc. v. NLRB*,
    Case No. 15-1049 (8th Cir. 2016) ...............................................20, 32, 36, 39

*Detroit Edison Co. v. NLRB*,
    440 U.S. 301 (1979)...................................................... 5, 7, 24, 25, 27, 28-29

*Douglas Foods Corp. v. NLRB*,
    251 F.3d 1056 (D.C. Cir. 2001)....................................................................36

*Dupuy v. NLRB*,
    806 F.3d 556 (D.C. Cir. 2015)......................................................................18

*\*Fleming Companies, Inc.*,
    332 NLRB 1086 (2000) ...........................................................................12, 23

*HEPC LAX, Inc.*,
    2001 NLRB LEXIS 341, Case No. 31-CA-24197, Slip Op. at 70...............23

*Hilton Credit Corp.*,
    137 NLRB 56 (1962) .....................................................................................22

*Hyundai America Shipping Agency*,
    357 NLRB No. 80 (2011) ...............................................................15, 26, 36

*\*Hyundai America Shipping Agency, Inc. v. NLRB*,
    805 F.3d 309 (D.C. Cir. 2013)...............................................................15, 36

*Int'l Union of Electrical, Radio and Machine Workers v. NLRB*,
    648 F.2d 18 (D.C. Cir. 1980)..................................................................29, 31

*Motor Vehicle Mfrs. Ass'n of the United States v.*
*State Farm Mutual Automobile Insurance*,
    463 U.S. 29 (1983)........................................................................................36

*National Black Media Coalition v. FCC*,
    775 F.2d 342 (D.C. Cir. 1985)......................................................................19

*National Postal Mail Handlers Union*,
    339 NLRB 93 ................................................................................................26

*NLRB v. Acme Industrial Co.*,
  385 U.S. 432 (1967)....................................................................20, 21, 28, 32

*NLRB v. Noel Canning*,
  __ U.S. __ , 134 S. Ct. 2550 (2015) ............................................................6

*NLRB v. Noel Canning*,
  705 F.3d 490 (D.C. Cir. 2013).......................................................................6

*\*NLRB v. Robbins Tire & Rubber Co.*,
  437 U.S. 214 (1978)..................................................... 1, 16, 17, 21, 22, 24, 26

*NLRB v. Truitt Mfg. Co.*,
  351 U.S. 149 (1956)....................................................................20, 21, 24, 28

*Northern Indiana Public Service Company*,
  347 NLRB 210 (2006) ..............................................................................31, 38

*Northern Indiana Public Service Company*,
  347 NLRB No. 17 (2006) ...............................................................................12

*Pennsylvania Power and Light Company*,
  301 NLRB 1104 (1991) ...........................................................................23, 32

*Purple Communications, Inc.*,
  361 NLRB No. 126 (2014) ............................................................................33

*Republic Aviation Corp. v. NLRB*,
  324 U.S. 793 (1945).........................................................................................39

*Southern S.S. Co. v. NLRB*,
  316 U.S. 31 (1942)...........................................................................................41

*Sutter E. Bay Hosps. v. NLRB*,
  687 F.3d 424 (D.C. Cir. 2012)......................................................................42

*Tennessee Coach Co.*,
  115 NLRB 677 (1956), *enfd.*,
  237 F.2d 907 (6th Cir. 1956) .......................................................................20

*Titanium Metals Corp. v. NLRB*,
    392 F.3d 439 (D.C. Cir. 2004)...............................................................19, 42

*Transport of New Jersey*,
    233 NLRB 694 (1977) ....................................................... 21-22, 28, 33

*Whirlpool Corp.*,
    281 NLRB 17 (1986) ...................................................................23

*Whole Foods Market, Inc.*,
    363 N.L.R.B. No. 87 (2015) .........................................................29

## **CONSTITUTIONAL PROVISION**

U.S. CONST. art II, § 2, cl. 2 .......................................................................6

## **STATUTES**

29 U.S.C. § 152(11) ...............................................................................11

29 U.S.C. § 157 ...............................................................................3, 7, 30

29 U.S.C. § 158(a) ...............................................................................2

29 U.S.C. 158(a)(1) ...............................................................................1

29 U.S.C. 159(a) ...............................................................................3

29 U.S.C. § 160(a) ...............................................................................1

29 U.S.C. § 160(e) ...............................................................................1

29 U.S.C. § 160(f)...............................................................................1, 18

Freedom of Information Act, 5 U.S.C. § 552 .........................................16

National Labor Relations Act § 2(11)...................................................11

National Labor Relations Act § 7 ..................................3, 7, 20, 29, 30, 31

National Labor Relations Act § 8(a) ................................................................2

National Labor Relations Act § 8(a)(1) .................................................1, 3, 4, 14, 20

National Labor Relations Act § 8(a)(5) ................... 1, 3, 4, 6, 14, 15, 16, 17, 20, 21

National Labor Relations Act § 9(a) ................................................................3

National Labor Relations Act § 10(d) ..............................................................6

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) *et seq.* (2000) ...2, 40

## **REGULATION**

29 C.F.R. § 101.15 ................................................................18

## **OTHER AUTHORITIES**

*2013 National Business Ethics Survey of the U.S. Workforce* (2014),
*available at* https://www.ethics.org/newsite/research/eci-research/nbes/
nbes-reports/nbes-2013. ................................................................35

EEOC Order 560.005, Prevention And Elimination Of Harassing Conduct In
The Workplace (Aug. 9, 2006), available at http://www.eeoc.gov/eeoc/
internal/harassment_order.cfm................................................................41

June 18, 1999 Notice regarding "Enforcement Guidance: Vicarious Employer
Liability for Unlawful Harassment by Supervisors, *Available at*
http://www.eeoc.gov/policy/docs/harassment.html.................................................41

NLRB Case Handling Manual (Part 1), Unfair Labor Practice Proceedings,
Section 10060................................................................22

NLRB Notice and Invitation to File Briefs in *Trustees Of Columbia
University In the City Of New York, Case No. 02-RC-143012*
(Jan. 13, 2016), *available at* https://www.nlrb.gov/cases-
decisions/invitations-file-briefs................................................................34

NLRB Notice And Invitation To File Briefs In *King Scoopers, Inc.*, 27-CA-129598 (Feb. 29, 2016), *available at* https://www.nlrb.gov/cases-decisions/invitations-file-briefs.................................................................................34

NLRB Representation-Case Procedures, 79 Fed. Reg. 74308 (Dec. 15, 2014) (codified at 29 C.F.R. pts 101, 102, and 103)..........................................................34

# <u>GLOSSARY OF TERMS</u>

| | |
|---|---|
| **ALJ** | Administrative Law Judge |
| **ALJD** | Administrative Law Judge Decision (J.A. 101-119) |
| **ASL** | Assisted Living Department |
| **CNA** | Certified Nursing Assistant |
| **Complaint** | Unfair Labor Practice Complaint  (J.A. 84-89) |
| **D&O** | NLRB's Decision and Order now on petition for review/enforcement (J.A. 151-168) |
| **EEOC** | Equal Employment Opportunity Commission |
| **FOIA** | Freedom of Information Act, 5 U.S.C. § 552 |
| **HR** | Human Resources |
| **JA** | Joint Appendix |
| **LVN** | Licensed Vocational Nurse or Charge Nurse |
| **NLRA** | National Labor Relations Act, 29 U.S.C. §§ 151-169 |
| **NLRB or Board** | National Labor Relations Board |
| **Piedmont Gardens** | American Baptist Homes of the West, d/b/a Piedmont Gardens (Petitioner) |
| **ULP** | Unfair Labor Practice |
| **Union** | Service Employees International Union, United Healthcare Workers – West (Intervenor for Respondent) |

## STATEMENT OF JURISDICTION

Piedmont Gardens petitions the Court for review of the NLRB's June 26, 2015 Decision and Order, 362 N.L.R.B. No. 139 ("D&O"), and the NLRB cross-petitions for enforcement of same. The Board had jurisdiction under Section 10(a) of the NLRA, 29 U.S.C. § 160(a), over the underlying unfair labor practice ("ULP") proceedings wherein the General Counsel of the NLRB alleged that Piedmont Gardens violated Sections 8(a)(1) and (5) of the NLRA, 29 U.S.C. § 158(a)(1) and (5) ("Section 8(a)(1) and (5)"), by refusing to disclose certain information to the Union. Now, this Court has sole jurisdiction of the matter under Sections 10(e) and (f) of the NLRA, 29 U.S.C. §§ 160(e), (f), which authorize judicial review of a final order of the Board. Piedmont Gardens' Petition for Review of the D&O was timely filed on July 6, 2015.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

Piedmont Gardens presents the following Statement of Issues to be raised on review:

**1.**    Whether the D&O's prospective elimination of *per se* witness statement confidentiality is an inadequate, irrational or arbitrary departure from longstanding Board precedent in *Anheuser-Busch, Inc.*, 237 N.L.R.B. 982 (1978), which, in turn, relies upon the Court's decision in *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214 (1978)?

- 1 -

2.     Did the Board commit legal error in its D&O by ordering Piedmont Gardens to "[c]ease and desist" from "[f]ailing and refusing" to provide to the Union requested information which is "relevant and necessary to the processing of a grievance" – a phrase which the Board clarifies in the D&O to mean that Piedmont Gardens is prohibited from not disclosing witness statements to the Union in the future based on a "generalized" interest to protect the integrity of its workplace investigations and that it must instead must possess specific evidence that "witnesses need protection, evidence is in danger of being destroyed, testimony is in danger of being fabricated, [or] there is a need to prevent a cover up"?  J.A. 153-160.

3.     Whether the D&O against Piedmont Gardens is an unwarranted interference with Piedmont Gardens' reasonable efforts to comply with federal antidiscrimination laws, including Title VII of the Civil Rights Act of 1965, 42 U.S.C. §§ 2000(e) *et seq.* as amended?

4.     Whether the D&O's conclusion that Lynda Hutton's witness statements were not protected from disclosure under *Anheuser-Busch,* 237 N.L.R.B. 982 lacks substantial evidence and is legally erroneous?

## STATUTES AND REGULATIONS

Section 8(a) of the NLRA, 29 U.S.C. § 158(a):

(a) Unfair labor practices by employer.  It shall be an unfair labor

practice for an employer—

(1) to interfere with, restrain, or coerce employees in the exercise of the

rights guaranteed in Section 157 of this title [Section 7 of the NLRA].

\* \* \*

(5) to refuse to bargain collectively with the representative of his employees,

subject to the provisions of Section 159(a) of this title [Section 9(a) of the NLRA].

## STATEMENT OF THE CASE

On August 26, 2011, the Union filed an unfair labor practice charge with

Region 32 of the NLRB ("Region 32") alleging that Piedmont Gardens violated

Sections 8(a)(1) and (5) of the NLRA "when it failed and refused to provide

relevant and necessary information for the processing of grievances."  J.A. 83.

On November 22, 2011, the Regional Director for Region 32 issued an

Unfair Labor Practice Complaint ("Complaint") against Piedmont Gardens

alleging that it violated Section 8(a)(1) and (5) by refusing to disclose to the Union

the names, job titles, and written statements of three employee witnesses who

decided to participate in Piedmont Gardens' investigation of misconduct by their

colleague (Arturo Bariuad, or "Bariuad") that resulted in his discharge.  J.A. 84-89.

On January 31, 2012, NLRB Administrative Law Judge Gerald Etchingham

("ALJ") presided over a trial on the Complaint.  J.A. 101.

On April 16, 2012, the ALJ issued a Decision and Order finding, in part, that Piedmont Gardens violated Sections 8(a)(1) and (5) of the Act.  He held that Piedmont Gardens was justified in refusing to produce the witness statements under *Anheuser-Busch, Inc.*, 237 N.L.R.B. 982 ("*Anheuser-Busch*") because they had been submitted "by the employee writers with expectations of confidentiality" and were thus *per se* privileged.  J.A. 115-116.  The ALJ reasoned that Piedmont Gardens maintains a nonposted practice of representing to its employees at investigations of misconduct that witness statements will be kept confidential regardless of subject matter or evidence of specific necessity.  J.A. 105-116.  The ALJ also determined that in failing to accept or discuss Piedmont Gardens' offer to provide summaries of the statement instead of the statements themselves, the Union failed to uphold its own duty to bargain in good faith and that "sitting on its hands and simply proceeding to trial" was unacceptable – thus, Piedmont Gardens did not violate Sections 8(a)(5) or (1) for not producing summaries of the witness statements.  J.A. 116.  The ALJ did however conclude that Piedmont Gardens violated Sections 8(a)(1) and (5) of the NLRA when it failed to provide the names and job titles of the employees who gave statements. [1]  J.A. 117.  The ALJ transferred further proceedings to the Board.  *Id.*

---

[1] Piedmont Gardens is not contesting before this Court, the Board's conclusion, based on the ALJ's decision, that it violated the NLRA when it refused to provide names and job titles of those who provided witness statements.

On May 11, 14, and 25, 2012 respectively, the General Counsel for the NLRB, Union, and Respondent respectively filed limited Exceptions to the ALJ's Decision and Order.  J.A. 120-129.

On December 15, 2012, the Board issued a Decision and Order.  J.A. 132-150.  The Board affirmed the ALJ's Decision and Order regarding the witness names and positions but reversed with respect to the issue of providing the witness statements themselves.  The Board determined that the rationale of *Anheuser-Busch* was flawed, and thus they decided to overturn the Board's longstanding guarantee of confidentiality to employee witnesses in favor of a generalized balancing test applied to other types of information purportedly under the Court's decision in *Detroit Edison Co. v. NLRB*, 440 U.S. 301 (1979) ("*Detroit Edison*").

Although the Board opted to not apply its new rule retroactively, recognizing that doing so would constitute "manifest injustice," it determined that one of the three witnesses' (Lynda Hutton) statements were not induced by a promise of confidentiality and were thus not capable of being withheld under *Anheuser-Busch*.  J.A. 136-137.  So reasoning, the Board issued an Order directing Piedmont Gardens, its officers, agents, successors, and assigns to, *inter alia*, "cease and desist from … [f]ailing and refusing to bargain in good faith with the Union by refusing to provide requested information that is relevant and necessary to the process of a grievance."  J.A. 137.  In addition to this broad cease and desist order,

the Board directed Piedmont Gardens to produce the witness statements of Lynda Hutton, to produce the names and job titles of "informants" against Bariuad, and to sign, post and distribute a Notice to Employees consistent with the Order.  J.A. 137-140.

On January 17, 2013, Piedmont Gardens filed a Petition for Review (Case No. 13-1011).

On January 25, 2013, on its own motion, the Court held the case in abeyance in light of its decision in *NLRB v. Noel Canning*, 705 F.3d 490 (D.C. Cir. 2013), which held that the NLRB was invalidly constituted from January 2012 to August 2013 because three of its members were unlawfully appointed under the Recess Appointments Clause, U.S. Const. art. II, § 2, cl. 3.  On June 26, 2014, the Court affirmed the Court's decision in *NLRB v. Noel Canning*, __ U.S. __ , 134 S. Ct. 2550 (2014).  Then, pursuant to Section 10(d) of the NLRA, the Board set aside its December 15, 2012 Decision and Order and made a motion to dismiss, which the Court granted on August 14, 2014.

On June 26, 2015, the Board issued a Decision and Order which was nearly identical to its December 15, 2012 Decision and Order.  J.A. 151-168.  The Board again decided to overturn *Anheuser-Busch's* longstanding recognition that Section 8(a)(5) does not prohibit employers from maintaining and asserting the *per se*

- 6 -

confidentiality of witness statements, and to adopt, non-retroactively, the generalized balancing test from *Detroit Edison*.

The Board reasoned that witness statements are not "unique" or "fundamentally different" from any other types of "relevant and necessary" information requested by unions.  J.A. 153-154.

Although the Board, without explanation, no longer imposed an order requiring a public notice reading to employees stating that Piedmont Gardens would be turning over certain "informant" information to the Union, it still required Piedmont Gardens to, on a prospective basis, (1) "[c]ease and desist" from "[f]ailing and refusing to bargain in good faith with the Union by refusing to provide requested information that is relevant and necessary to the processing of a grievance [or] [i]n any like or related manner" interfere with employees' rights under Section 7 of the NLRA ("Section 7 rights"), 29 U.S.C. 157 (*i.e.*, prospectively comply with the Board's overturning of *Anheuser-Busch* with respect to witness statement confidentiality); (2) produce the requested names and job titles of "informants" against Bariuad; (3) provide Hutton's witness statements to the Union; and (4), post and comply with a written statement recounting same (*i.e.*, inform employees that it is producing names and job titles of "informants" against Bariuad).  J.A. 157, 168.

## STATEMENT OF FACTS

### I.      Background

### A.      Piedmont Gardens

Piedmont Gardens is a nonprofit continuing care retirement community in Oakland, California that provides housing and care for three hundred seniors.  J.A. 65-66.  Residents receive care based on need, from independent and assisted living to memory support and skilled nursing.  *Id.*  All residents are able to summon emergency assistance from Certified Nursing Assistants ("CNAs") or charge nurses by activating a pendant which they wear or by pushing a wall-mounted call button, both of which, in turn, send a resident's apartment number to on-duty staff via pager notification.  J.A. 76.

Piedmont Gardens' Assisted Living Department ("ASL") provided care for thirty-four to thirty-seven residents at all relevant times.  J.A. 66-67.  The ASL is a twenty-four hours per day, seven-days per week operation that entails helping residents with their activities of daily living (*e.g.*, bathing, dressing, eating, taking medication, and overcoming falls or other emergencies).  *Id.*  During the night shift in the ASL, two CNAs and one licensed vocational nurse ("LVN") provide care in residents' apartments (located on floors eight through ten) outside of direct observation by supervisors or management.  J.A. 67-68.

### B.    The Union and Bariuad

The Union exclusively represents a bargaining unit of Piedmont Gardens'
employees that includes CNAs, dietary workers, housekeeping workers,
maintenance workers, and laundry workers.  J.A. 103.

Bariuad was a Union-represented CNA who had been assigned to work in
the ASL during night shifts for approximately two years prior to his termination in
June 2011.  J.A.  37, 41, 46.  Like other CNAs, Bariuad was responsible for
providing care to residents on certain assigned floors and to summon assistance
from colleagues, if needed.  J.A. 77.

### C.    Piedmont Gardens' Policy And Practice Of Ensuring Confidentiality Of Written Statements Provided By Witnesses Reporting Employee Misconduct

Piedmont Gardens ensures the safety and high quality care of its residents in
part by relying on employees to report any misconduct.  J.A. 67-69.  Because
supervisors are unable to directly monitor employees at all times, Piedmont
Gardens considers it important that employees feel comfortable coming forward to
report any concerns.  *Id.*

Upon receiving any reports of misconduct, Piedmont Gardens conducts a
prompt investigation, including solicitation and review of available witness
statements.  *Id.*  It has a longstanding practice to assure confidentiality to any
witness statements submitted by an employee.  *Id.*  The purpose of the policy is to

encourage those coming forward to report incidents and to prevent intimidation, harassment, or fear of same.[2]  *Id.*

## II.    Investigation Of Employee Misconduct

In June 2011, newly hired Charge Nurse (Barbara Berg), still in training, told the Director of Assisted Living (Alison Tobin) that she had discovered Bariuad sleeping during his shift.  J.A. 39, 78-79.  Tobin asked her if she would draft a written statement and assured her that Piedmont Gardens had a policy and practice of keeping such statements confidential.  *Id.*  Berg provided her a written statement.  *Id.*

Tobin also contacted a CNA (Ruth Burns) who was on duty with Bariuad on the night in question.  J.A. 28-29, 32, 80-82.  Burns said she had observed Bariuad sleeping during his shift in the past, and that everyone who worked the night shift knew that Bariuad regularly slept during his shift.  *Id.*  Tobin requested that Burns draft a statement and told her that it would be kept confidential.  J.A. 50.  Burns, who was "glad" that her statement would be kept confidential, provided Tobin a written statement.  J.A. 34.

Around the same time that Tobin received statements from Berg and Burns, Tobin also received an unsolicited witness statement from the other Charge Nurse

---

[2] There was no allegation in the Complaint that Piedmont Gardens' confidentiality policy or practice (or application of same) was intended to undermine Union representation of employees in grievance processes or to accomplish any other improper purpose.

(Lynda Hutton) on duty with Bariuad on the night in question.  J.A. 37-40.  Hutton was aware that another employee had reported Bariuad's sleeping on the job and she decided that she could not let his misconduct continue any longer and "had to report him also."  J.A. 38-39.  She drafted a statement, with the belief that it would be kept confidential, and slipped it under Tobin's office door.  J.A. 39, 43-46.  At trial, Hutton (a forty-year employee) testified that she would have considered resigning from Piedmont Gardens, despite never receiving an express threat of violence from Bariuad, if she knew Piedmont Gardens would disclose her statement to the Union.[3]  J.A. 44-45.

After Piedmont Gardens finished its investigation, including review of the above-identified witness statements, it terminated Bariuad's employment.[4]  J.A. 7, 23-24, 59-60, 77-78.

## III.  Union Information Requests

On June 15, 2011, Piedmont Gardens' Acting Human Resources Director Lynn Morgenroth and Union Representative Donna Mapp discussed Bariuad's termination.  J.A. 94.   Later the same day, Mapp emailed Morgenroth to request

---

[3] One or two days after submitting her initial witness statement, Hutton provided a second one, upon request by Piedmont Gardens, to clarify the date she observed Bariuad sleeping on duty.  J.A. 48-51, 81-82.

[4] The NLRB did not allege in the Complaint or otherwise find that Berg, Burns, or Hutton was a supervisor under Section 2(11) of the NLRA, 29 U.S.C. § 152(11).

- 11 -

information "needed as part of the [Union's] investigation during the grievance process" including:

- "A complete copy of the worker file [for Bariuad.]"
- "Any and all statements that was use as part of your investigation of Mr. Arturo [Bariuad]." [sic]
- "Any and all documents including the call light log time records"
- "The names and job title of everyone that was involved in the investigation." [sic]
  *Id.*

On June 17, 2011, Morgenroth responded by providing a copy of Bariuad's personnel file, copies of the call light log (*i.e.*, records of residents requesting assistance via pendant or wall-mounted alarms), Bariuad's time card, and the names of those supervisors who conducted the investigation. J.A. 95-97. However, regarding Mapp's request for employee witness statements, Morgenroth responded as follows:

> The employer conducted a confidential internal investigation regarding the allegations, as such[,] disclosure of this information would breach witness confidentiality. The Grievant (whom you represent) was present when the incident(s) occurred, so you already have this information. The law does not require that we provide you with witness statements collected during our investigation. *See Anheuser-Busch*, 237 NLRB 982 (1987); *Fleming Companies, Inc.*, 332 NLRB [1086] (2000); *Northern Indiana Public Service Company*, 347 NLRB No. 17 (2006). However, the Company would like to work with the Union regarding an accommodation to disclosure. Mr. Bariuad's statement is included in his HR file, attached.

> J.A. 97.

- 12 -

Mapp replied the same day to Morgenroth's email and again requested the witness statements, claiming that without them the grievance process would be "one sided" and "unfair" but nevertheless proposing that Piedmont Gardens instead simply make all witnesses available for interview by the Union. J.A. 98. Notwithstanding her claims, by this time, Mapp and the Union had determined which employees had been working with Bariuad on the night of the incident and had spoken to them (except for Burns, inexplicably).[5] J.A. 24-25.

Later in the day on June 17, 2011, the Union filed a formal grievance ("Bariuad Grievance") under its collective bargaining agreement with Piedmont Gardens wherein it alleged that Bariuad was "wrongfully terminated" (*i.e.*, without just cause) and seeking his full reinstatement with back pay. J.A. 93.

On June 21, 2011, Morgenroth replied to Mapp and rejected Mapp's request to produce the witness statements or make witnesses available for interviews arranged by Piedmont Gardens. J.A. 99-100. However, Morgenroth offered to provide summaries of the witness statements as an alternative accommodation. *Id.* Mapp did not respond to or otherwise accept Morgenroth's offer to provide summaries of the statements, and thus they were not produced to the Union. J.A. 15-16. Further, as noted in Morgenroth's June 21 email, Mapp had not responded to requests to hold a grievance "step 1" meeting. J.A. 99.

---

[5] Piedmont Gardens had posted, per usual practice, the names of those assigned to the shift in question near the time clock for a two-week period. J.A. 70-72.

Sometime during the week of June 27, 2011, Mapp and Morgenroth met in person.  J.A. 15-16.  Mapp again requested the names and statements of the witnesses (without addressing Morgenroth's proposed accommodation of providing summaries), Morgenroth declined to provide same and, on August 26, 2011, the Union filed the unfair labor practice charge underlying the current case.  J.A. 37, 83.  There, the Union alleged that Piedmont Gardens violated Sections 8(a)(1) and (5) of the Act by failing and refusing to provide "relevant and necessary information" for "processing" the Bariuad Grievance.[6]

## SUMMARY OF ARGUMENT

For thirty-seven years since the Board's unanimous decision in *Anheuser-Busch*, employers like Piedmont Gardens have been able to promise any employee with the courage to participate in investigations of misconduct that they could rely on their written statements being held *per se* confidential and privileged from disclosure to the Union.  No more.

In the D&O, the Board has announced a sweeping new interpretation of Section 8(a)(5) of the NLRA based on the unreasoned and irrational conclusion that employee witness statements are just like any other type of generic information requested by the Union.  Under the Board's novel reading of Section

---

[6] The Grievance form itself erroneously refers to "grievances," but at all times has been understood to only refer to the Bariuad Grievance.  J.A. 83.

8(a)(5), to be applied prospectively, Piedmont Gardens is prohibited from relying on a "generalized desire to protect the integrity of employment investigations" and may now only withhold witness statements it if it possesses specific evidence proving a "legitimate and substantial confidentiality interest" at any point which the Union requests the statements (*i.e.*, from the very beginning of an investigation to the end).  J.A. 153-157.

Even more extreme, the Board has stated that a "legitimate and substantial" confidentiality interest requires hard evidence of "whether in any give[n] investigation witnesses need protection, evidence is in danger of being destroyed, testimony is in danger of being fabricated, [or] there is a need to prevent a cover up.'"  J.A. 153 (citing *Hyundai America Shipping Agency, Inc.*, 357 N.L.R.B. No. 80, slip op. at 14-15 (2011).  This is the same standard of proof which this Court labeled "novel" and declined to endorse in *Hyundai America Shipping Agency, Inc. v. NLRB*, 805 F.3d 309, 314 (D.C. Cir. 2015).

The Board does not base its departure from longstanding precedent on any articulated change in the American workplace, technology, or a need to clarify its precedent.  Nor did the Board analyze, let alone review, any evidence that thirty-seven years of *per se* witness statement confidentiality has created any problems for unions (the one in this case, or elsewhere) in representing their members in vetting grievances, the sole proffered basis for their right to witness statements in

the first place under Section 8(a)(5).  And, unlike other recent cases, the Board did not invite public briefing, hold hearings, or otherwise investigate the current state of grievance processing in unionized workplaces before making a drastic change to how employers are able to maintain discipline and comply with a myriad of federal antidiscrimination laws that, *inter alia*, require or at least encourage providing employees with assurances of confidentiality.

Instead, with a solution in search of a problem, three members of the Board have proclaimed, contrary to thirty-seven years of Board decisions since *Anheuser-Busch*, that they are "not persuaded that witness statements are so fundamentally different from other types of information that a blanket exemption from disclosure is required."  J.A. 154.  They reason that *Anheuser-Busch* was flawed because it was primarily based on *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214 (1978), a decision which arose in the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA") context, but which (ironically) protects the NLRB's closely guarded right to maintain the confidentiality of witness statements collected during its own investigations.  *Id.*

In *Robbins Tire*, the Court rejected (as the Board requested) imposing a burden of proof where individualized evidence of actual danger or other threats to witnesses would be required.  437 U.S. at 234-243.  Agreeing with the Board, the Court reasoned that the inherent risk of coercion and intimidation and, more

importantly, the harm flowing from witnesses' perception of same, justified absolute privilege from disclosure prior to hearing. *Id.* at 240. The NLRB continues to vigorously protect its own witness statements from prehearing disclosure for the same reasons articulated in *Robbins Tire*. Now, however, the Board seeks to deny Piedmont Gardens, and all employers for that matter, the ability to conduct effective workplace investigations and enforce rules by securing witness statements through assurances of confidentiality.

Thus, for all of the above and foregoing reasons, the Court should grant Piedmont Gardens' Petition for Review, deny enforcement of the Board's Order, and vacate the Board's Order insofar as it requires Piedmont Gardens to prospectively comply with the Board's new interpretation of Section 8(a)(5) which eliminates Piedmont Gardens' ability to rely on *Anheuser-Busch's* provision of *per se* witness statement confidentiality. Piedmont Gardens does not challenge disclosing the names and positions of the witnesses under the D&O because, *inter alia*, the passage of time (more than four and a half years from the beginning of its investigation) has minimized any confidentiality and harassment related concerns regarding supplying information to the Union about the Bariuad Grievance, especially given the Board's unfortunate disclosure of information (*e.g.*, names of witnesses) in the D&O itself.

## STANDING

Pursuant to 29 U.S.C. § 160(f), Piedmont Gardens has standing as an "aggrieved" party subject to the final order of the Board and is entitled to seek review of same in the U.S. Court of Appeals for the District of Columbia Circuit. 29 C.F.R. § 101.15 provides that a final Board order, as adopted by court judgment, is subject to enforcement by contempt and other remedial actions, including sanctions and penalties.

## STANDARD OF REVIEW

Courts generally defer to the Board's interpretation of the NLRA if it is reasonable and the Board's "explication is not inadequate, irrational, or arbitrary." *Allentown Mack Sales & Service, Inc. v. NLRB*, 522 U.S. 359, 364 (1998). However, reversal is required where the Board's decision "relied upon findings that are not supported by substantial evidence, failed to apply the proper legal standard, or departed from its precedent without providing a reasoned justification for doing so," particularly, where the Board is "turning its back on its own precedent and policy without reasoned explanation and substantial evidence undergirding its determinations." *Dupuy v. NLRB*, 806 F.3d 556, 561-563 (D.C. Cir. 2015) (citation and internal quotation marks omitted).

Further, "[w]here the review is not a question of fact, but of a judgment as to the proper balance to be struck between conflicting interests, the deference owed to

an expert tribunal cannot be allowed to slip into judicial inertia which results in the

unauthorized assumption by an agency of a major policy decision properly made

by Congress." *Bro-Tech Corp v. NLRB*, 105 F.3d 890, 894 (3d Cir. 1997) (citation

and internal quotation marks omitted).  In such situations of conflicting interests

and major policy decisions, the Board must provide sufficient reasoning and

factual findings to support its conclusions.  *Id.*  The courts are not a "rubber

stamp." *Titanium Metals Corp. v. NLRB*, 392 F.3d 439, 445 (D.C. Cir. 2004)

(holding that the Board was prohibited from abandoning established, longstanding

policies on a "whim.")

## **ARGUMENT**

**I.**     **The Board's Decision & Order Is An Inadequate, Irrational, And/Or Arbitrary Departure From Thirty-Seven Years Of Precedent Protecting Employer And Employee Interests In Witness Statement Confidentiality.**

It is a "clear tenet" of administrative law that "if the agency wishes to depart

from its consistent precedent[,] it must provide a principled explanation for its

change of direction." *National Black Media Coalition v. FCC*, 775 F.2d 342, 355

(D.C. Cir. 1985).  Here, the Board has failed to provide a sufficient justification for

overruling thirty-seven years of Board decisions, grounded in Supreme Court

precedent no less, holding that employers and employees have a *per se* legitimate

and substantial confidentiality interest in witness statements made during employer

investigations of misconduct, and that it is a not a violation of the NLRA to

withhold witness statements where confidentiality has been assured.  In so doing, the Board has violated the "underlying purpose" of the NLRA to provide "industrial peace" by promulgating clear and consistent rules which balance the rights of employers, employees, and unions in a predictable and justified way. *ConAgra Foods, Inc. v. NLRB*, Case No. 15-1049, 2016 U.S. App. LEXIS 2838, at *15-17 (8th Cir. 2016) (citing *Brooks v. NLRA*, 348 U.S. 96, 103 (1954)).

Section 8(a)(5) of the NLRA makes it an unfair labor practice for an employer "to refuse to bargain" with the representative of its employees.[7]  The Court recognizes an implied duty under same to produce, upon request, relevant information needed by a union to perform its duties.  *NLRB v. Truitt Mfg. Co.*, 351 U.S. 149 (1956) (union entitled to financial information during contract negotiations).

In *NLRB v. Acme Industrial Co.*, 385 U.S. 432 (1967), the Court confronted the narrow issue of whether a union was entitled to information about the removal of machinery, which related to a dispute pending arbitration.  It held that, notwithstanding that the arbitrator would later rule whether the information was relevant or not, the union still had a general statutory right under Section 8(a)(5) to

---

[7] Any violation of Section 8(a)(5) of the NLRA is also a derivative violation of Section 8(a)(1), which makes it an unfair labor practice to "interfere with, restrain, or coerce" employees in the exercise of their Section 7 rights.  *See Tennessee Coach Co.*, 115 N.L.R.B. 677, 679 (1956), enfd. 237 F.2d 907 (6th Cir. 1956).  Here, there are no allegations or findings of an independent basis for violating Section 8(a)(1).

the requested information.  The Court reasoned that "arbitration can function

properly only if the grievance procedures leading to it can "sift out" unmeritorious

claims.  385 U.S. at 438-439.

Consistent with *Truitt* and *Acme*, the Board in *Anheuser-Busch* reaffirmed

the "general" obligation under Section 8(a)(5) to honor requests for information.

237 N.L.R.B. at 984.  However, it clarified that such duty did not "encompass"

disclosing to a union confidential witness statements collected from employees

during investigations of misconduct.  237 N.L.R.B at 985.  The Board, relying on

*Robbins Tire*, 437 U.S. 214, reasoned that witness statements "are fundamentally

different from the types of information contemplated in *Acme*, and disclosure of

witness statements involves critical considerations which do not apply to requests

for other types of information."  237 N.L.R.B. at 983-984.  Compelled disclosure

of witness statements prior to arbitration hearings, the Board explained, would risk

exposure of witnesses to coercion or intimidation by the union or workers, would

cause a chilling effect on witness participation in employer investigations, and

would overall decrease the quality and viability of employer investigations.  *Id.*

Despite holding that witness statements obtained after assurance of confidentiality

would be *per se* privileged from disclosure to a union, the Board in *Anheuser-*

*Busch* still recognized that employers had a duty to produce, upon request, the

names of witnesses.  237 N.L.R.B. at 984, fn. 5 (citing *Transport of New Jersey*,

- 21 -

233 N.L.R.B. 694 (1977) (reasoning that names of witnesses were relevant and necessary for a union to be able to obtain, for itself, information from witnesses in evaluating a grievance)).

In *Robbins Tire*, the Court held that witness statements taken by the Board during its investigations were *per se* exempt from disclosure under the FOIA. 437 U.S. at 239-243. The Court explained that there was both an "obvious" risk of coercion or intimidation of witnesses to make or change statements and that employees or nonemployees would be reluctant to provide statements absent assurance of confidentiality. 437 U.S. at 239. It emphasized that "[t]he danger of witness intimidation is particularly acute with respect to current employees." 437 U.S. at 240. Thus, the Court held that withholding the ability from the Board to assure and preserve confidentiality to its witnesses would constitute an undue "interference" with its investigations and enforcement efforts. 437 U.S. at 240-243.

As evident in *Robbins Tire*, the Board vigorously asserts the central importance of its witness statements remaining confidential and *per se* privileged from disclosure prior to trials. *See*, *e.g.*, NLRB Case Handling Manual (Part 1), Unfair Labor Practice Proceedings, Section 10060; *see also Hilton Credit Corp.*, 137 N.L.R.B. 56, 56 fn. 1 (1962) (explaining that the Board's pretrial disclosure of witness statements would "necessarily exert[] an inhibitory effect on employees'

- 22 -

willingness to make such statements and to otherwise cooperate with Board agents.")

The Board's decision in *Anheuser-Busch*, built squarely on *Robbins Tire*, remained controlling precedent for nearly four decades before the D&O. *See*, *e.g.*, *Fleming Companies, Inc.*, 332 N.L.R.B. 1086, 1087 (2000) (reversing ALJ's ordered disclosure of witnesses statements based on the "clear Board precedent" of *Anheuser-Busch*); *see*, *e.g.*, *Whirlpool Corp.*, 281 N.L.R.B. 17, 25 (1986) (recognizing that *Anheuser-Busch* created a "clear, simple, and all-encompassing rule rather than one which entails detailed examination and balancing of all the particular facts."); *see*, *e.g.*, *HEPC LAX, Inc.*, Case No. 31-CA-24197, 2001 NLRB LEXIS 341, at *70 (A.L.J. 2001) (noting that the Board has "consistently upheld" *Anheuser-Busch*).

Only a slight modification was later made to *Anheuser-Busch*'s in requiring employers to provide a summary of witness statements such that a union would have notice of the substance of the statements (*i.e.*, whether the employer had evidence meeting a reasonable suspicion or just cause standard). *See Pennsylvania Power and Light Company*, 301 N.L.R.B. 1104 (1991). However, even then, the Board reaffirmed *Anheuser-Busch* and recognized the legitimate interest in employers' and employees' desires and needs for confidentiality during investigations. *Id.*

The D&O is a radical, unjustified departure from *Robbins Tire*, *Anheuser-Busch* and their progeny.  It holds that Piedmont Gardens (which must comply with its order), may only withhold witness statements if it has evidence meeting a burden of proving a "legitimate and substantial" confidentiality that outweighs the union's need for the information as judged on a case-by-case basis.  J.A. 154-157.  In so holding, the Board purports to adopt the "balancing test" from the Court's decision in *Detroit Edison*, 440 U.S. 301.  *Id.*  However, this decision, issued after *Anheuser-Busch*, does not preclude the continued recognition of a *per se* legitimate and substantial interest in witness statement confidentiality.

Although the Court in *Detroit Edison* recognized *Truitt*'s general holding that the duty to supply information turns on the circumstances of the request, it ruled that an employer did not violate the Act in withholding individual employee's scores on a psychological aptitude test (and the tests themselves) from the union where (like Piedmont Gardens) it had made assurances of confidentiality and the company had a reasonable concern that without confidentiality the future validity of the tests would be undermined.  440 U.S. at 319-320.

Overturning the Board's ordering of disclosure of the tests and individual employee scores, the Court in *Detroit Edison* noted that it was "obvious that the remedy selected by the Board does not adequately protect the security of the tests." 440 U.S. at 315.  The Court noted that deference to the Board was not a "blank

check for arbitrary action," and that the Board had "identified no justification for a remedy granting such scant protection to the Company's undisputed and important interest in test secrecy…."  440 U.S. at 316.  Rather, the Court took "judicial notice" of the commonsense notion that "[t]he sensitivity of any human being to disclosure of information that may be taken to bear on his or her basic competence is sufficiently well known" and, as such, is impacted by the assurance of confidentiality (or not).  440 U.S. at 318-319.  So reasoning, the Court ruled that the employer had a "legitimate and substantial" interest in the confidentiality of its aptitude tests and individual employee scores which outweighed any "minimal" burden on the union's ability to review and process grievances.  440 U.S. at 315-320.

Beyond the Board's misconstrual of *Detroit Edison* in the D&O as creating, let alone mandating, individualized, case-specific balancing of interests or precluding the *per se* recognition of a confidentiality in certain types of documents (like aptitude test scores or witness statements), the Board has imposed an unreasonable standard on what meets a threshold confidentiality interest.  The Board states in the D&O that "[e]stablishing a legitimate and substantial confidentiality interest requires more than a generalized desire to protect the integrity of employment investigations.  An employer must instead 'determine whether in any give[n] investigation witnesses need protection, evidence is in

- 25 -

danger of being destroyed, testimony is in danger of being fabricated, [or] there is a need to prevent a cover up.'"  J.A. 153 (citing *Hyundai America Shipping Agency*, 357 N.L.R.B. No. 80, slip op. at 14-15 (2011)).

The fundamental problem with the Board's D&O is that employers always have a "legitimate and substantial" interest in keeping witness statements confidential.  *Cf. National Postal Mail Handlers Union*, 339 N.L.R.B. 93, 94-95 (union entitled to withhold witness statements based on concern of potential for "tension" and "confrontations" in the workplace).  There will always be the risk of the dangers identified in *Robbins Tire* and *Anheuser-Busch*.  And despite the Board's derision of these interests as "generalized," they are anything but.

Most importantly, absent the recognition of a general interest in confidentiality, and the ability to *per se* promise and ensure confidently, the ability to successfully solicit candid witness statements in the first place will be undermined.  Here, it was undisputed that Piedmont Gardens relied on employee reports to discover misconduct or lapses in care.   J.A. 67-69.  In fact, without Berg's reporting of misconduct (when she was a new employee in training, no less), Piedmont Gardens would likely not have discovered that Bariuad, one of the three employees responsible for helping to care and respond to any emergencies for thirty-seven ASL residents, was sleeping on the job.

- 26 -

Under the Board's new standard of a "legitimate and substantial" confidentiality interest, even the aptitude tests scores protected by the Court in *Detroit Edison* would not qualify for protection. The employer there did not have any concrete evidence that witnesses needed protection, evidence was "in danger" of being destroyed or fabricated, nor was there a need "to prevent a cover up." J.A. 153. Like Piedmont Gardens, the employer in *Detroit Edison* merely had what the Board now derisively labels a "generalized" desire to maintain confidentiality. *Id.*

> **A.  The Board Erred In Concluding, Without Any Evidence Or Reasoned Analysis, That Confidential Witness Statements Are Not Fundamentally Different From Other Types Of Generic Information Disclosable To Unions.**

In the D&O, the Board in conclusory fashion deemed *Anheuser-Busch*'s holding that witness statements were "fundamentally different" from other types of information as unpersuasive. J.A. 154. As the Board has long recognized, this is not so. Chiefly, unlike other types of information, witness statements themselves and their candid contents are often the products of confidentiality.

Absent a promise of confidentiality, a witness statement (solicited or not) is unlikely to be created in the first place and, if submitted, will be less candid. J.A. 158-159, 161-166 (Miscimarra, P. and Johnson, H., dissenting separately); *cf. Asarco, Inc. v. NLRB*, 805 F.2d 194, 199-200 (6th Cir. 1986) (holding that employer did not have to disclose internal investigative accident reports because

uninhibited, self-critical analysis, which benefits employer, employee and union interests, would be "seriously thwart[ed]" by disclosure). This makes witness statements quite unlike static information, like the records regarding removal of machinery in *Acme* or the financial reports in *Truitt*.

Further, witness statements are a very different type of information from the names of witnesses themselves, which must generally be disclosed under *Transport of New Jersey*, 233 N.L.R.B. 694. First, the fact that an employee has spoken with the employer during an investigation does not reveal that the employee has implicated a coworker – only that she or he has met with the employer and cooperated with an investigation. In short, the union will not be able to necessarily determine if an employee is, in the Board's regrettable terminology, an "informant." J.A. 157; *see Boyertown Packaging Corp.*, 303 N.L.R.B. 441, 444-445 (1991) (employer required to furnish the names of witnesses but not to identify only those who complained about the grievant, reasoning "the singling out of witnesses adverse to a grievance spotlights them as opponents to the grievant's cause and, by so doing, unnecessarily enhances the possibility they may be subject to coercion or intimidation in an effort to persuade them to change or retract their oral reports previously given to the employer.") Second, a witness's name, unlike a witness statement, does not implicate the universal "sensitivity" to disclosure of information bearing on ones' competence that the Court recognized in *Detroit*

- 28 -

*Edison.* 440 U.S. at 318; *Cf. Int'l Union of Electrical, Radio & Machine Workers*

*v. NLRB*, 648 F.2d 18, 27 (D.C. Cir. 1980) (holding that an employer did not have

to disclose employee complaints because they had a recognized privacy interest in

them and disclosure would inhibit the future filing of complaints).

**B.    The Board's Decision And Order Is Arbitrary And Capricious In Failing To Analyze Or Adequately Weight The "Chilling" Impact On Employees.**

The Board's lack of any analysis from the perspective of employees

demonstrates the arbitrary nature of its reasoning, especially given the weight that

it routinely places on ensuring that employees are free from any unlawful

"chilling" effects on their ability to exercise (or not) Section 7 rights under the

NLRA.  *See, e.g.*, *Whole Foods Market, Inc.*, 363 N.L.R.B. No. 87 (2015), slip op.

at 16 ("[w]here reasonable employees are uncertain as to whether a rule restricts

activity protected under the Act, that rule can have a chilling effect on employees'

willingness to engage in protected activity.") Here, for example, the Board failed to

weigh the undisputed fact that Hutton (a forty-year employee) stated in her

testimony that she would have considered resigning from Piedmont Gardens if she

knew Piedmont Gardens would disclose her statement to the Union.  J.A. 36, 43-

46.  Similarly, the Board failed to weigh the undisputed fact that new employees,

like Berg (still in training no less), would also be unlikely to report misconduct

without assurance of confidentiality.  J.A. 39, 78-79

In recent years, the Board has issued numerous decisions invalidating workplace rules that purportedly "chilled" exercise of Section 7 rights to discuss discipline or investigations, even in the absence of any actual evidence that employees in those cases were even aware of the rules, much less that they actually discouraged from exercising their statutory rights, or that there was a fact-supported, particularized risk of same in those cases. For example, in *Banner Health Sys.*, 362 N.L.R.B. No. 137, slip op. at 24 (2015), the Board invalidated as overbroad an employer rule in large part because the "chilling" potential on employees who would, the Board reasoned, conclude that discussing participation in an investigation was not worth the risk of discipline. Here, the Board does not even attempt to harmonize its decision in the underlying case with its other case law establishing liberal standards for what is capable of "chilling" legitimate employee activities. Nor does it explain how "chilling" employee reports to management of misconduct by coworkers does not undermine Section 7 rights.

The Board must surely concede that an employee's participation with an investigation will often implicate his or her Section 7 rights, for example, to engage in "mutual aid or protection" against a manager or coworker (like Bariuad, whose shirking of work doubtlessly increased the burden on coworkers). 29 U.S.C. § 157; *see Banner Health Sys.*, 362 N.L.R.B. No. 137, slip op. at 25, n. 16 (noting that employees' Section 7 rights are implicated when they seek to "protect

themselves from the employer's failure to impose discipline on supervisors or coworkers who adversely affect their lives at work" or if they involve efforts to improve terms and conditions of work).  Or, for example, because an employee does not want to inform the union regarding its report because a union representative is implicated in misconduct.  *See Int'l Union of Electrical, Radio & Machine Workers*, 648 F.2d at 27 ("The Union seeks copies of complaint from the employer because the complaining union member, presumably, has elected not to involve his union. The filing of complaints would be inhibited if employees knew their complaints would be given to a local union representative or fellow union member who, in some cases, might be the very subject of the complaint.")

Further, the Board provides insufficient weight or analysis in the D&O to the fact that an employers' diminished ability to discover and remedy workplace misconduct directly impacts Section 7 rights.  *See Northern Indiana Public Service Company*, 347 N.L.R.B. 210 (2006) ("an employer's inability to reliably assure interviewees of confidentiality is likely to impede its investigations into workplace harassment or threats of violence and to deter the reporting of such incidents. Such investigations are common and necessary for the safety of the workplace. Without them, an employer would be handicapped in protecting its employees from harm by verifying and correcting workplace misconduct.") (internal citations omitted).

**C.    The Board Failed To Analyze Or Rely On Any Evidence Of Deficiencies With The Current State of Union Grievance Investigations (*e.g.*, Unions' Inability To Rely On Summaries Of Witness Statements Plus The Names And Positions Of Witnesses).**

The Board's decision does not articulate any basis, logical or otherwise, for its conclusion that continued adherence to the thirty-seven years old *Anheuser-Busch* bright line test regarding confidential witness statements somehow prevents or even interferes with a union's statutory obligations.  Rather, in conclusory fashion, it explains that the basis for its rule is the need to ensure that unions are able to "sift out" unmeritorious claims by reviewing all relevant information, including witness statements.  J.A. 153-154 (citing *Acme Industrial*, 385 U.S. at 438).  However, the Board neither considered nor analyzed any evidence indicating that unions were experiencing any problems under then-existing law with vetting grievances based on the information to which they were already entitled.  Nor did the Board review or analyze any evidence of extraneous changes (*e.g.*, technology) requiring the overruling of precedent.  Thus, without any showing of necessity or minimal justification, the Board has upended workplace stability, a primary purpose of the NLRA.  *ConAgra Foods, Inc. v. NLRB*, Case No. 15-1049, 2016 U.S. App. LEXIS 2838, at *16-22 (8th Cir. 2016)

Existing case law at the time of the D&O provided a broad and powerful right to obtain relevant information.  *See*, *e.g.*, *Pennsylvania Power and Light Company*, 301 N.L.R.B. 1104 (1991) (summaries of witness statements generally

- 32 -

disclosable); *Transport New Jersey*, 233 N.L.R.B. 694 (1977) (witness names

generally disclosable).  The Board does not identify a single deficiency in relying

on witness statement summaries or other alternative accommodations to vet

grievances.  Here, for example, the Board fails to explain how the Union would

have been unable to sufficiently "vet" the Bariuad Grievance by considering, *inter*

*alia*, its own conversations with employees on duty with Bariuad on the night in

question, the names and identities of all witnesses known to the employer, a

summary of all witness statements (as proposed by Piedmont Gardens to the

Union), the records regarding call light logs, and Bariuad's personnel file.  J.A. 15-

16, 24-25, 95-100.  With such information, the Union's minimal interest in vetting

the grievance for merit would have been satisfied.

Further, unlike its other recent decisions, the Board failed to explain its

departure from precedent on changes in the American workplace, technology or

other such factors.  For example, in *Purple Communications, Inc.*, 361 N.L.R.B.

No. 126, slip op. at 1-26 (2014), the Board overturned prior decisions regarding

employee use of employer email system because, in large part, it found that email

had "expanded dramatically" in recent years as a means of communications, as

based on statistics and multiple research studies (empirical evidence which the

Board specifically requested).  Similarly, in recently adopting new election

procedure rules, the Board first solicited extensive public comment, held public

- 33 -

hearings, and determined that existing elections were suffering from unacceptable levels of delay, the changes would modernize processes by taking advantage of new technology, reasonable alternatives were not available, and its changes were "targeted solutions to discrete, specifically identified problems."  Representation-Case Procedures, 79 Fed. Reg. 74308 (Dec. 15, 2014) (codified at 29 C.F.R. pts 101, 102, and 103).

Here, unlike other recent or pending decisions, the Board did not solicit any public comment or amicus briefing, hold hearing, or otherwise investigate whether there were any underlying problems with the status quo.  *See*, *e.g.*, NLRB Notice And Invitation To File Briefs In *King Scoopers, Inc.*, 27-CA-129598 (Feb. 19, 2016) (invitation to file briefs regarding proposed change in calculating make whole remedies calculation), *available at* https://www.nlrb.gov/cases-decisions/invitations-file-briefs (last visited Feb. 27, 2016); *see*, *e.g.*, NLRB Notice and Invitation to File Briefs in *Trustees Of Columbia University In the City Of New York, Case No. 02-RC-143012* (Jan. 13, 2016) (regarding proposed change to overrule precedent regarding whether graduate student assistants are statutory employees under the NLRA), *available at* https://www.nlrb.gov/cases-decisions/invitations-file-briefs (last visited Feb. 27, 2016).

Beyond failing to solicit, review, or analyze any evidence justifying the solution it proposed for a nonexistent problem, the Board failed to present or

analyze any evidence regarding the harms flowing from its elimination of the *per se* confidentiality rule. Most glaringly, the Board failed to address the empirical evidence chronicled by Member Miscimara in his dissent, that employees risk actual retaliation when they report misconduct. J.A. 158, fn. 6, citing Ethics Resources Center, *2013 National Business Ethics Survey of the U.S. Workforce*, 9, 26-28 (2014), *available at* https://www.ethics.org/newsite/research/eci-research/nbes/nbes-reports/nbes-2013.

In the absence of such reasoned analysis, this Court should presume that preexisting law under *Anheuser-Busch* sufficiently protected unions' right to information while sufficiently protecting employers' and employees' concerns for confidentiality of witness statements. And further, that no extraneous environmental changes otherwise required departure from longstanding precedent protecting the confidentiality of witness statements.

## II.   The Board's Order Requires Compliance With An Inadequate, Irrational, And Arbitrary Burden Of Proof Any Time Witness Statements Are Requested By The Union.

The Board states in the D&O that "[e]stablishing a legitimate and substantial confidentiality interest requires more than a generalized desire to protect the integrity of employment investigations. An employer must instead 'determine whether in any give[n] investigation witnesses need protection, evidence is in danger of being destroyed, testimony is in danger of being fabricated, [or] there is

a need to prevent a cover up.'"  J.A. 153 (citing *Hyundai America Shipping Agency*, 357 N.L.R.B. No. 80, slip op. at 14-15.  Absent satisfaction of same, an employer does not have a "legitimate and substantial" confidentiality interest and may not withhold a witness statement, upon request, by a union.

The Court has already had occasion to consider this Board's unreasonable standard of confidentiality, deemed it "novel," and declined to endorse it.  *Hyundai America Shipping  Agency, Inc.*, 805 F.3d at 314 (D.C. Cir. 2015); *see also*, *ConAgra Foods*, 2016 U.S. App. LEXIS 2838 at *22-23 (declining to enforce Board's "novel" reading of the NLRA which threatened to undermine long-established balance of rights and require unnecessary fact-specific inquiries).

Since this standard is now integral to the Board's new rule for establishing confidentiality, this Court should vacate the D&O for that reason.  By vacating the D&O, which expressly incorporates this standard, this Court will be adhering to its precedent of refusing to approve orders which are unworkable or which have damaging implications not addressed in a reasoned fashion.  *See Douglas Foods Corp. v. NLRB*, 251 F.3d 1056, 1064 (D.C. Cir. 2001) ("The NLRB's casual treatment of the implications of its order is startling."); *see also Motor Vehicle Mfrs. Ass'n of the United States v. State Farm Mutual Automobile Insurance*, 463 U.S. 29, 44 (1983) ("an agency rule would be arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed

to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.")

Further, absent vacating the D&O, every employer in the United States which, like Piedmont Gardens, applies a universal policy of assuring confidentiality to those employees who report misconduct in witness statements in the face of union disclosure demands will now, *ipso facto*, be committing an unfair labor practice.  Such an outcome is not "reasonably defensible" or "even close." *Adtranz Abb Daimler-Benz Transportation, N.A., Inc., v. NLRB*, 253 F.3d 19, 26 (D.C. Cir. 2001) (vacating Board's order prohibiting employer from having a policy prohibiting abusive and threatening language in the workplace).

The Board's new standard of proof provides no weight to employees' reasonable and natural apprehension about reporting on co-workers, or indeed supervisors (in other words, acting like an "informant," to use the Board's unfortunate term from the D&O's required posting) unless they have actually received threats or fear specific, provable coercion or intimidation from the union and/or work colleague under investigation.  Make no mistake about it.  Without the ability to guarantee up front the protection  of witness statements from disclosure to the union, fewer employees will be willing to risk "going on the record" to

disclose workplace misconduct, and employers will be less able to address that misconduct, whether it be sexual harassment, workplace discrimination, threats of violence or (as is involved in this case), conduct which potentially risks the health and safety of aged and infirm residents.

The test urged by the Board in this case also leads to other absurd results. Assuming that an employee witness actually has been threatened by another employee if they dared to "rat" on a fellow employee, how many employees will be brave enough to give a written statement of such threats to their employer without the employer's assurances that their statement will not be disclosed to the union?  The result of the new standard is that, by applying it, employers will be less able to discover, through candid witness statements, the type of evidence necessary to obtain specific evidence justifying confidentiality under that  new "case by case" standard. Indeed, as the Board itself has recognized in holding that employers' interview notes of witnesses during investigations must be presumed confidential because "[a]n employer's inability to reliably assure interviewees of confidentiality is likely to impede its investigations into workplace harassment or threats of violence and to deter the reporting of such incidents." *Northern Indiana Public Service Company*, 347 N.L.R.B. at 212.

Further, the Board's envisioned imposition of a case-by-case balancing test is unworkable because it will inevitably place human resources ("HR")

- 38 -

practitioners in the position of having to perform legal analysis every time they

initiate a routine investigation of employee misconduct.  They will lack an "easily

ascertainable standard upon which employers can rely so as to avoid fact-specific

conflicts each time they enforce their policies," which will undermine the

underlying purpose of the NLRA to provide "industrial peace."  *see also*, *ConAgra*

*Foods*, 2016 U.S. App. LEXIS 2838 at *16-17; *see Brooks*, 348 U.S. at 102-103

(stating that the "underlying purpose of this statute [the NLRA] is industrial

peace.").  Worse yet, without sufficient evidence *at the outset* of any immediate

threats, HR practitioners will be unable to assure confidentiality, as such

particularized evidence may not come out until later in the investigation.

　　　　The bottom line is that under the Board's new standard for confidentiality,

an employee witness must be willing to give a statement at his or her own risk,

without any reasonable assurance that  their statement will not later be disclosed to

the union.

**III.　The Board's Decision And Order Undermines Piedmont Gardens'
　　　Ability To Reasonably Ensure Compliance With Federal Anti-
　　　Discrimination Laws  – Areas Outside The NLRA's Delegated
　　　Responsibility.**

　　　　There is no question that employers have an "undisputed right … to

maintain discipline in their establishments."  *Republic Aviation Corp. v. NLRB*,

324 U.S. 793, 798 (1945).  Beyond legitimate business interests in efficiency, the

Court recognizes that employers have interests in discipline because they are

subject to a litany of federal and state laws imposing liability "should they fail to maintain a workplace free of racial, sexual, and other harassment." *Adtranz*, 253 F.3d at 27.

For that reason, in *Adtranz*, this Court vacated a Board order that prohibited employers from having the reasonable "prophylactic measure" of a policy prohibiting abusive and threatening language in the workplace. 253 F.3d at 28. Like in *Adtranz*, the D&O should be vacated because Piedmont Gardens' prophylactic adoption of *per se* witness statement confidentiality policy encourages the reporting of misconduct and facilitates investigation of same, in order to both provide a secure and lawful workplace and to protect its residents and business interests.

In Members Miscimarra's and Johnson's respective dissents from the D&O, they recognized that employers like Piedmont Gardens rely on confidential investigations to comply with statutes beyond the NLRA. J.A. 158-168. Witness statements, in particular, often serve as the primary tool for investigating safety issues, bullying, and harassment of all types. J.A. 52; *see generally* Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000(e) *et seq.*

The Board cannot ignore the impact of its decision on other statutes and their policies; instead, it must engage in a careful balancing. *CAN-AM Plumbing, Inc., v. NLRB*, 321 F.3d 145, 153-1544 (D.C. Cir. 2003) (granting petition for review

because Board only made conclusory findings that its decision did not impact public policies of Davis-Bacon Act) *(citing Southern S.S. Co. v. NLRB*, 316 U.S. 31, 47 (1942) ("the Board has not been commissioned to effectuate the policies of the [NLRA] so single-mindedly that it may wholly ignore other and equally important Congressional objectives.").

The Equal Opportunity Commission ("EEOC"), the main federal agency charged with overseeing statutorily-mandated antidiscrimination investigations under Title VII, recognizes the importance of confidentiality during investigations. In its June 18, 1999 Order 915.002 entitled "Enforcement Guidance: Vicarious Employer Liability for Unlawful Harassment by Supervisors," the EEOC states that employers' "anti-harassment policy and complaint procedure should contain, at a minimum, the following elements: … [a]ssurance that the employer will protect the confidentiality of harassment complaints to the extent possible." *Available at* http://www.eeoc.gov/policy/docs/harassment.html(last visited Feb. 27, 2016). The EEOC's own investigatory procedures (which are intended to provide a "model" for all employers), require confidentiality. *See* EEOC Order 560.005, Prevention And Elimination Of Harassing Conduct In The Workplace (Aug. 9, 2006), *available at* http://www.eeoc.gov/eeoc/internal/harassment_order.cfm (last visited Feb. 27, 2016).

**IV.    The Board's Conclusion That Hutton's Witness Statements Were Not Confidential Under *Anheuser-Busch* Is Legally Erroneous And Not Supported By Substantial Evidence.**

This Court generally defers to the Board unless its decision is not supported by substantial evidence, lacks a reasonable basis in established law, or does not apply correct legal standards.  *See Titanium Metals Corp.*, 392 F.3d at 445-6; *see also Sutter E. Bay Hosps. v. NLRB*, 687 F.3d 424, 437-438 (D.C. Cir. 2012). "[M]ere suspicion or conjecture cannot be accepted as substantial evidence." *Boyle's Famous Corned Beef Co. v. NLRB*, 400 F.2d 154, 165 (8th Cir. 1968) (internal quotation marks and citations omitted); *see Allentown Mack Sales & Serv., Inc. v. NLRB*, 522 U.S. 359, 378 (1998) (the Board "is not free to prescribe what inferences from the evidence it will accept and reject, but must draw all inferences that the evidence fairly demands.")

Here, the ALJ, after evaluating live testimony from Hutton at trial, concluded that her witness statements were protected under *Anheuser-Busch*.  J.A. 116.  He found that "Hutton believed that her witness statement[s] would remain confidential under [Piedmont Gardens']  blanket policy that all witness statements would remain confidential and would not be produced in response to a relevant information request." *Id.*

In the D&O, the Board overturned the ALJ's finding, concluding Hutton's statements were not "witness statement[s]" under *Anheuser-Busch*. J.A. 137.  It

- 42 -

conceded that Piedmont Gardens had a policy of assuring witness statement

confidentiality and that Hutton assumed her statements would remain confidential

because of this policy. *Id.* But, the Board nevertheless determined that "she was

not prompted to give the statements by assurances of confidentiality" because

reporting misconduct was part of her job duties and she was not given an

"affirmative assurance" of confidentiality beyond the policy itself. *Id.* The

Board's conclusion is not supported by substantial evidence and is contrary to its

precedent.

As a factual matter, as the ALJ found, Hutton was prompted to give her

statements based on Piedmont Gardens' confidentiality policy. J.A. 44, 69, 105,

116.

> **Q.** Before you wrote the first statement and gave it to HR, did you believe
> that your employer was going to keep that statement confidential?
> **A.** Yes.
> **Q.** Was that fact important to you when you provided the statement to HR?
> **A.** Yes.

> J.A. 44.

As a legal matter, for a statement to be protected under *Anheuser-Bush*, it

simply needs to be a statement adopted by a witness who has received an assurance

that it will remain confidential – indeed, the simplicity of this bright line test (and

the absence of further consideration of facts) was the Board's proffered reason for

overturning *Anheuser-Busch*. J.A. 152-153. The cases cited by the Board in the

D&O confirm these minimal conditions but do not require any "affirmative assurance of confidentiality." J.A. 157. Further, as the ALJ noted, *Anheuser-Bush* "did not distinguish between witnesses statements provided by employees or supervisors," so Hutton's duties or responsibilities to report misconduct are irrelevant. J.A. 116. Again the purported basis of the Board's overruling of *Anheuser-Busch* in the D&O is that it does not involve a detailed case-by-case examination of facts and is a "blanket" policy. J.A. 154.

The Board's invention of a requirement under *Anheuser-Busch* that an employer must give additional assurances of confidentiality, beyond a policy or practice of providing same, is to elevate form over substance and produce an absurd result; here, that even though Hutton knew about Piedmont Gardens' witness statement confidentiality policy and provided statements under same, they are not confidential because she did not have a specific conversation about confidentiality with Piedmont Gardens' HR beforehand.

Further, the Board's reasoning that Hutton's reporting of misconduct was "part of her job duties" so it is not protected, does not obviate Hutton's reasonable expectation of confidentiality. J.A. 157. Neither *Anheuser-Busch* nor any case interpreting it has ever held such. And for good reason. The interests and purposes protected by *Anheuser-Busch* focus on the universal concern that "that witnesses may be reluctant to give statements absent assurances that their

- 44 -

statements will not be disclosed…." 237 N.L.R.B. at 984. These concerns are irrelevant to an analysis of whether job duties could generally require a reporting duty. Indeed, Hutton's job duties apparently did not prompt her to file the statements because she testified to previously being aware of Bariuad's sleeping on duty but felt that, this time, she could not let it go on any longer. J.A. 39. So, without solicitation, she drafted her first statement and slipped it under the door of HR – believing that it would be kept confidential. J.A. 38-45. This is exactly the type witness statement *Anheuser-Busch* was designed to protect.

Thus, for all of the foregoing reasons, the Board's conclusion that Hutton's witness statements did not qualify as confidential under *Anheuser-Busch*, and thus must be disclosed, is meritless legally and factually. The Board's Order should be vacated accordingly.

## <u>CONCLUSION & REQUESTED RELIEF</u>

For all of the foregoing reasons, Piedmont Gardens requests that the Court grant its Petition for Review, deny the Board's cross-application for enforcement, and vacate the Board's Order.

Dated:  February 29, 2016             By:

                                    _/s/ David S. Durham_
                                    David S. Durham, CA Bar No. 76296
                                    Christopher M. Foster CA Bar No. 278932
                                    DLA PIPER LLP (US)
                                    555 Mission Street, Suite 2400
                                    San Francisco, CA  94105-2933
                                    Telephone:  415.836.2500
                                    Facsimile:   415.836.2501

                                    _Attorneys for Petitioner,_
                                    _American Baptist Homes of the West, d/b/a_
                                    _Piedmont Gardens_

## <u>CERTIFICATE OF COMPLIANCE</u>

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

[ X ] this brief contains [*10,081*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

[     ] this brief uses a monospaced typeface and contains [*state the number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

[ X ] this brief has been prepared in a proportionally spaced typeface using [*Microsoft Word 2007*] in [*14pt Times New Roman*]; *or*

[     ] this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].

Dated: <u>February 29, 2016</u>          */s/ David S. Durham* _____
                                              *Counsel for Petitioner*

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on this 29th day of February, 2016, I caused this Brief of Petitioner and Joint Appendix to be filed electronically with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

Linda Dreeben                        Bruce Harland
Usha Dheenan                         David A. Rosenfeld
Kellie Isbell                        Weinberg Roger & Rosenfeld
Appellate and Supreme Court          1001 Marina Village Parkway
  Litigation Branch                  Alameda, CA 94501-6430
National Labor Relations Board       (510) 839-6600 (Telephone)
1015 Half Street SE, Room 4135       (510) 337-1023 (Facsimile)
Washington, DC  20570
(202) 273-2960 (Telephone)
(202) 273-0191 (Facsimile)


*Counsel for Respondent*                 *Attorneys for Intervenor for*
                                         *Respondent Service Employees*
                                         *International Union,United*
                                         *Healthcare Workers - West*

I further certify that on this 29th day of February, 2016, I caused the required copies of the Brief of Petitioner and Joint Appendix to be hand filed with the Clerk of the Court.

*/s/ David S. Durham*
*Counsel for Petitioner*